[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 09, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12667

_____

Agency No. A95 903 827

GERMAN ANDRES VASQUEZ  OLIVAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 9, 2007)**

Before TJOFLAT, FAY and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by
designation.

Petitioner German Andres Vasquez Olivar ("Olivar") appeals the Board of Immigration Appeals' ("Board") affirmance of the Immigration Judge's ("IJ") decision denying his petition for asylum or withholding of removal. The Board summarily adopted the IJ's decision. The IJ, while finding Olivar credible, held that his testimony regarding his fear of persecution was not based on political opinion or religious beliefs, the two protected grounds he raised. For the reasons set out below, we remand to the Board to remand to the IJ for additional findings.

## BACKGROUND

After a hearing to determine if Olivar was eligible for asylum or withholding of removal, the IJ found that Olivar is a citizen of Colombia who entered the United States on August 27, 2001. Olivar applied for asylum because he had been threatened and confronted by the Revolutionary Armed Forces of Colombia ("FARC").

Olivar testified that he grew up in a Catholic family and attended Catholic school. In 1997, he joined Setem-Proinde, an organization founded by a priest that promotes the quality of life and education for "unprotected youth." Olivar became active and held chat sessions with youth where he would promote Christian teachings to try to convince the young people to follow the path of Christ, and to not get involved with violent groups such as FARC. Olivar testified that he publicly urged these violent groups to lay down their weapons and follow Christ.

2

Specifically, Olivar testified that there were two young FARC members in particular who wanted to return to a more peaceful civil life. At Olivar's suggestion, Setem-Proinde took steps to house these individuals and protect them from FARC reprisals. In August of 2001, he noticed two men following him. When confronted, one of the men showed Olivar that he was carrying a gun. The other man walked up to Olivar, identified himself as a member of FARC and asked him for identification. Olivar claimed not to have identification, and that he was not, in fact, German Andres Vasquez Olivar. The FARC member called him a liar, and told Olivar he was going to pay for taking members away from FARC. Olivar testified that the FARC member said "you are taking the young militia men out of our ranks, and why [are you] putting into their heads Christian ideas and things that really [aren't] for them." The individual struck Olivar and then fled the scene with his partner.

Next, Olivar testified that on August 20, 2001, a fifteen year-old girl who attended one of his lectures gave him an letter, which he opened upon returning home that evening. The letter was written by hand on FARC stationery. The letter read:

> Son of a bitch I think that the message was not clear. I hope this letter will make you understand the message that we wanted to give to you [when we confronted you previously]. The truth is that to our young soldiers or whatever you want to call them or us, we are not interested or shit in you to wash the brain to our soldiers with your little workshops or invite them to your religious things the reality is we don't care an ass... All of you and those priests are some son of the bitch thieves... avoid us the dirty work and get out of here... Get out [of Colombia you] son of a bitch Missioner of shit.

3

After receiving this letter, according to the IJ's findings, Olivar consulted with a brother of the religious organization who advised him to leave the country and come to the United States.

## DISCUSSION

To be eligible for asylum, 8 U.S.C. § 1158(b)(1)(A) requires that an alien qualify as a refugee. A refugee is defined in 8 U.S.C. § 1101(a)(42)(A) as "any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."

In his decision, the IJ opined that the motivation for FARC's actions was not because of Olivar's religious or political beliefs, but rather stemmed from Olivar's attempts to convince younger FARC members to leave their ranks. While the IJ pointed out that Olivar's political opinion had little to do with his work with Setem-Proinde, he does not make any specific findings as to the evidence Olivar presented about his religious beliefs. Rather, the IJ simply concluded that FARC's actions were

4

the result of the sole fact that Olivar was attempting, and succeeding in at least two cases, to get young members to turn away from FARC.

However, the IJ made no mention of the specific pieces of evidence Olivar presented about his religious beliefs. He testified that Setem-Proinde is a Christian organization. He testified that he used Christ's teachings to try to steer young people away from FARC. The letter FARC delivered to Olivar also makes several references to the religious nature of his work. While FARC's ultimate problem with Olivar was that he was trying to get members to turn away from the FARC, the IJ did not mention that it was Olivar's religious beliefs and teachings that motivated him to reach out to young FARC members. The IJ simply failed to explain what role Olivar's religious beliefs played in the action taken by FARC. It is no answer to suggest that the members of FARC who threatened Olivar expressed nothing as to their religious beliefs or that such was the motivation for their actions. The question is whether or not Olivar was being persecuted because of the religious beliefs which motivated his actions.[1]

---

1. Although additional issues were raised by the petitioner, we find it unnecessary to consider them in view of our ruling.

The petition is granted in part; the matter is remanded to the Board of Immigration Appeals for remand to the Immigration Judge for Additional Findings specifically addressed to the question outlined herein.